JACOBS PHARMACY CO. *v.* SOUTHERN BANKING & TRUST CO.

1. Although it may not have been within the power of a given corporation to become accommodation indorser upon promissory notes, yet where it was a trading corporation having undoubted authority under its charter in the due course of its business to make or indorse promissory notes for value, it was liable upon a promissory note payable to itself and duly indorsed by it (though the indorsement was made for accommodation only), to an innocent purchaser who *bona fide* and for value acquired title to the note before its maturity and without notice of the real character and purpose of the indorsement. Under such circumstances the innocent purchaser was warranted in acting upon the assumption that the indorsement was for value, there being no presumption that the corporation had acted *ultra vires.*

2. The evidence in this case being sufficient to justify a finding that the plaintiff was such an innocent purchaser of the note in controversy and that the secretary of the corporation had authority to make and indorse promissory notes in its corporate name, the verdict against the corporation was warranted. There was no error of law, and no abuse of discretion in refusing to grant a new trial.

December 2, 1895.

Complaint on note. Before Judge Westmoreland. City court of Atlanta. January term, 1895.

*Simmons & Corrigan,* for plaintiff in error.
*Brandon & Arkwright,* contra.

SIMMONS, Chief Justice.

This was an action by the Southern Banking and Trust Company against the maker and endorsers of a promissory note payable to the order of the Jacobs Pharmacy Company, and endorsed "Jacobs Pharmacy Co., Joseph Jacobs." No plea was filed by the maker. The Jacobs Pharmacy Company pleaded, not indebted; also, that it was a corpora-

tion, and did not through its proper officer endorse the note sued upon; that while its name was signed thereon by Joseph Jacobs, who was its secretary at the time, he had no authority to make the endorsement; that its relation to the note was merely that of an accommodation endorser, and the transaction was therefore *ultra vires;* and that the fact that the endorsement was for accommodation only was known to the plaintiff at and before the time when the note was accepted by the plaintiff.

It appeared on the trial of the case, that the Jacobs Pharmacy Company was a trading corporation, but its charter was silent as to its power to make or endorse negotiable paper. It appeared also that the endorsement was for accommodation only, but the evidence was conflicting as to whether the plaintiff had notice of this fact when the note came into its hands. The note was discounted by the plaintiff before maturity, and according to the testimony of its cashier, who represented it in the transaction, nothing was known by him as to its being accommodation paper. It appeared further that Joseph Jacobs, as secretary of the Jacobs Pharmacy Company, had been accustomed in the due course of its business to sign and endorse notes in the corporate name, which were recognized and paid by the corporation. There was a verdict against the maker, and against the Jacobs Pharmacy Company as endorser, and a motion for a new trial was made by the latter, which was overruled, and it excepted.

One of the grounds of the motion is, that the court charged the jury as follows: "If you find from the evidence that the plaintiff received the paper before it was due, signed and endorsed as it appears, and that it received it in the due course of business and for value, and without notice of any defense, it would be protected, and would have the right to recover against the maker and all the endorsers the amount of the note and interest, and against the defendant who filed pleas (if not sustained) ten per

cent. attorney's fees." This was alleged to be error for the reason that the court in this part of the charge placed the defendant corporation upon the same footing and held it subject to the same liability on an endorsement as an individual. There was no error in this instruction. Every trading corporation, unless forbidden by its charter, has the power to issue negotiable paper, in the due and ordinary course of its business; and where a corporation having this power makes or endorses such paper, although for an unauthorized purpose, the defense of *ultra vires* will not avail it as against an innocent purchaser who *bona fide* and for value acquires title to the paper before maturity. This has been frequently held in cases where, as in the present case, the defense was that the endorsement was for accommodation only. See 1 Am. & Eng. Enc. of Law (second edition), "Accommodation paper," pp. 348, 349, and cases cited; 27 Am. & Eng. Enc. of Law (first edition), "*Ultra Vires*," pp. 387, 388; 5 Thomp. Corporations, §6027; 2 Mor. Private Corp. §597, and cases cited; 2 Cook, Stock, Stockholders & Corp. Law, §774.

The 5th, 6th and 7th grounds of the motion for a new trial are without merit, and indeed were not insisted upon in the argument here.

The only other grounds of the motion are that the verdict was contrary to law and the evidence. There was ample evidence to warrant the verdict, and there was no error in denying a new trial.　　*Judgment affirmed.*